**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward J Gladney, | No. CV-17-00427-TUC-DCB |
| Plaintiff, | **ORDER** |
| v. | |
| JT Shartle, et al., | |
| Defendants. | |

On December 19, 2018, the Court granted in part and denied in part a Motion to Compel discovery filed by the Plaintiff. The Court ordered Defendants to provide *in camera* certain potentially responsive documents which Defendants asserted were confidential and covered by the Privacy Act or of a highly sensitive nature reflecting law enforcement security information. Due to the shut-down of the federal government, the case was stayed, including this discovery. On February 1, 2019, the Defendants filed a Notice of resumed government activity. The Court lifts the stay and grants in part and denies in part the remainder of the Plaintiff's Motion to Compel. (Doc. 41.)

The Court has reviewed the documents tendered *in camera.* There is no question that the post orders reflect highly sensitive security law enforcement information. In part the information contained in the post orders is unnecessary because the Defendants have admitted that the perpetrator of the alleged sexual assault[1] was out of bounds. Relevant to

---

[1] The Court describes the altercation between the two inmates as a sexual assault because the perpetrator touched the Plaintiff to pull the victim's pants down; the perpetrator then self-masturbated in front of the victim.

the question of negligence, and not admitted, is the question of: why was the perpetrator inmate out of bounds?

Request for Production No. 1and 3.

Plaintiff seeks discovery of any and all duties of Housing Unit Officers at USP Tucson that existed on May 19, 2016 (the day he was assaulted). Plaintiff asks how did the alleged assailant gain access to B-2 Unit at USP Tucson on May 19, 2016, between the hours of 9:01 am—10:05pm?

The post orders are relevant to the question of negligence because they reflect a highly structured inmate tracking system, including stand-up body counts, inmate identification cards, passes, and very specific procedures for monitoring inmates as they move within the prison facility such as going from cell to job assignment, to a medical appointment, etc. The Defendants have admitted that the alleged assailant was out of bounds, but the investigation report presented *in camera* was into the alleged assault, not the out of bound status of the alleged assailant. Defendants respond that they have produced the BOP's Program Statement 5500.14, *Correctional Services Procedures Manual.* The Court notes that Defendants include in the *in camera* review materials, Program Statement 550014B, *Complex Supplement: Inmate Accountability.* The Court does not know whether this is a copy of the Program Statement actually disclosed or a Supplement, and the Defendants make no argument as to whether the Supplement should be disclosed or not.

The Defendants respond to Plaintiff's discovery request that they consulted with the officer on duty at the time of the assault, and he reported that he did not recall the alleged assailant entering the housing unit or the circumstances of the event, therefore, Defendants do not know what happened or how the alleged assailant came to be out of bounds. The *Complex Supplement: Inmate Accountability* Program Statement 5500.14B and the post notes suggest, otherwise. Both reflect specific procedures are in place for tracking inmate movement 24/7 within the facility; there appear to be procedures in place, which if followed, would enable the Defendants to know the exact whereabouts of an inmate at any

given point in time. It was not enough to ask the officer on duty, randomly checking passes, if he knew what happened. The relevant question is the one asked by the Plaintiff: how did the alleged assailant gain access to B-2 Unit at USP Tucson on May 19, 2016, between the hours of 9:01 am—10:05pm? The answer should be given in the context of the system designed to monitor inmate whereabouts.

The Court concludes, however, that disclosure of the post notes is not necessary because this information can be provided to the Plaintiff through other means, such as has been done by Defendants in producing Program Statement 5500.14 and 5500.14B. The inmate accountability system reflected in the post notes is of course revealed to all inmates to the extent they need to know the appropriate procedures which must be followed for compliance, i.e., to not be considered out of bounds. In other words, inmates are required to follow specific procedures, such as carrying an identification card, standing up for counts, checking in and out when moving from one place to another, etc. Obviously, these requirements are communicated to all inmates, including the Plaintiff.[2] Defendants need only disclose which one of these known inmate accountability requirements the alleged assailant violated when he was admittedly out of bounds in Plaintiff's unit. It is not enough for Defendants to simply admit that the alleged assailant was out of bounds because he was somewhere, where he was not supposed to be. The admission does not make these two discovery requests irrelevant to the question of negligence.

Request for Production No 6.

The alleged assailant inmate's disciplinary history is relevant to show whether the Defendants should have known that he needed to be housed in a facility where he would be subject to closer supervision.

Request for Production No. 7.

Even though the Defendants do not dispute that the sexual assault occurred, the incident report given to the alleged assailant is relevant because it goes to the nature of the Plaintiff's injuries. The fact that it has already been disclosed to the alleged assailant

reduces the risk of its disclosure to third-party witnesses who were interviewed as part of the investigation. If Defendants believe that any of the third-party witnesses might be at risk from the disclosure of the investigative report to the Plaintiff, the Defendants may redact the third-party witnesses' statements.

Request for Production No. 8.

Even though the Defendants admit that the alleged assailant was transferred, any information as to why he was transferred may be relevant to Plaintiff's claim that Defendants acted negligently by not exercising sufficient supervision over the alleged assailant, i.e., housing the perpetrator inmate at FCC-Tucson was negligent.

As explained herein, the Plaintiff's Requests for Production are relevant, and Defendant shall produce the discovery. The Defendants shall, however, provide a confidentiality agreement to the Plaintiff which he must sign and return before Defendants are required to produce document for Requests 6, 7 and 8.

**Accordingly,**

**IT IS ORDERED** that THE stay is lifted; the Court denies the Plaintiff's Motion in Opposition to the Stay (Doc. 64) AS MOOT.

**IT IS FURTHER ORDERED** that the remainder of the Motion to Compel Discovery (Doc 41) is GRANTED IN PART AND DENIED IN PART.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall file the documents reviewed *in camera* UNDER SEAL.

Dated this 19th day of March, 2019.

_____
Honorable David C. Bury
United States District Judge