IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA

EDWARD J. GLADNEY )
    Plaintiff, )
)
v. ) CIVIL NO.: 17-cv-427-DCB
)
THE UNITED STATES )
   OF AMERICA, )
   Defendant. )

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPPORT OF SUMMARY JUDGMENT AND REQUEST FOR INQUEST

*Statement of the Case*

Plaintiff alleges on May 19, 2016, while she was confined in the United States Penitentiary-Tuscon, Plaintiff was sexually assaulted by another inmate between 9:01 a.m. and 10:05 a.m. Plaintiff claims Defendant negligently "failed to provide adequate officer monitoring of an out-of bounds inmate and failed to adequately staff the housing unity with at least two officers as required. " Plaintiff further states that Plaintiff filed an administrative claim under F.T.C.A., which was denied on March 10, 2017. Plaintiff seeks, "Money Damages to the Fullest Extent of the Law."
(See Decl. of Gladney and Doc. # 7).

*Federal Tort Claim Act Claim*

"A federal prisoner may maintain a claim for damages against the United States of America under the …FTCA… for injuries sustained as a result of fault on the part of governmental employee." Brady v. Smith, 656 F. 2d 466, 468 (9th Cir. 1981). The Plaintiff asserts that because of B.O.P.'s negligence, the United States violated a duty to

1

the Plaintiff pursuant to 18 U.S.C. 4042, 28 C.F.R., Part 115, §115.13 (a), 11, 28 C.F.R., Part 115, § 115.87(d), and Federal Bureau of Prisons Program Statement #3420.11(6), and # 1210.24(7)(b). (See Plaintiff's Statement of Undisputed Facts).

Further, "while prisoner's" remedy for a breach of the duties prescribed by 4042 is an action brought pursuant to the F.T.C. A., such actions still require courts to discover whether a private individual responsible for the care and protection of another individual would be liable pursuant to the state law in the circumstances of the particular case." United Scottish Ins. Co. v. U.S., 614 F. 2d 188, 198 (9th Cir. 1979) (citation omitted). Here, Arizona negligence law applies. In Arizona, the tort of negligence generally requires a showing of four elements: "(1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach proximately caused the plaintiff's injury; and (4) resulting damages." KB Home Tucson, Inc. v. Charter Oaks Fire Ins. Co., 236 Arizona 326, 332, 340 P.3d 405, 411 (Ct. App. 2014).

The first element, that the defendant owed a duty to the plaintiff hinges on the existence of an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." Delci v. Gutierrez Trucking Co., 229 Ariz. 333, 335, 275 P.3d 632, 634, (Ct. App. 2012). "A person holds himself out to the public as possessing special knowledge, skill, or expertise must perform his activities according to the standard of his profession." Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co., 140 Ariz. 383, 398, 682 P. 2d 388, 403 (1984).   Additionally, under Arizona law, a person acts with gross negligence if "he acts or fails to act when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an

2

unreasonable risk of harm to others, but also involves a high probability that harm will result." Walls v. Ariz . Dept. of Pub. Safety, 826 P. 2d 1217,1221, 170 Ariz. 591, 595 (Ct. App.1991). In the instant case, both prior to and during the incident, the Plaintiff appeared transgender\feminine in manner and appearance. (Decl. of Gladney and Decl. of L. J YoungBear). Further, the B.O.P. possessed information which identified the Plaintiff as being **homosexual** on the date of the sexual assault. In addition, at the time of the incident, United States Penitentiary Tucson was a facility with a "Sex Offender Management Program" which **housed several high-security Sex Offenders**. (Decl. of Gladney), (Exbt. #9, page 18).

*Deliberate Indifference*

Some courts have inferred that prison officials knew of the risk of harm to a Plaintiff based on the Plaintiff's **feminine** appearance... or reputation as a drag queen or "**known homosexual**". Taylor v. Mich. Dept. Of Corrections, 69 F. 3d 76 (6th Cir. 1995), Jones v. Banks, 878 F. Supp. 107 (N.D. Ill 1995). Even if prison officials do not know about the risk to a particular prisoner, they can be held liable for policies or conditions that are dangerous to all prisoners or to an **identifiable group of prisoners**. Farmer v. Brennan, 511, U.S. 825, 843, 114 S. Ct. 1970 (1994; Janes v. Hernandez, 215 F. 3d 541,542-43 (5th Cir. 2000) (per curiam); Winton v. Board of Commissioners of Tulsa County, Okla., 88 F. Supp. 2d 1247,1265 (N.D. Okla. 2000) (knowledge of a "particularized risk" need not be shown to establish deliberate indifference if there is knowledge of a long – standing, pervasive, and well–documented risk).

"Groups" may be "identifiable" because of prisoners' personal characteristics, their records or backgrounds, or the way they are treated or housed by the prison system.

3

On May 19, 2016 the Plaintiff was a known homosexual, transgender, and presented feminine mannerisms. Further the B.O.P. had records documenting this fact.

Identifiable groups acknowledged by the courts so far include accused or convicted sexual offenders; Weiss v. Cooley, 230 F. 3d 1027, 1029-30, 1032 (7th Cir. 2000), prisoners who are young, small, naïve, or a passive and therefore vulnerable to intimidation; Redman v. County of San Diego, 942 F.2d 1435, 1448 (9th Cir. 1991) (en banc), transgender prisoners; Green v. Bowles, 361 F.3d 290, 294 (6th Cir. 2004); Randolph v. State, 74 F. Supp. 2d 537, 542 (D. Md. 1999) (citing Farmer, 511 U.S. at 843). The B.O.P also possessed records of the Plaintiff documenting he was naïve, passive, and therefore vulnerable to intimidation.

Prison officials may be found deliberately in different if they fail to protect prisoners who are obvious victims; Farmer v. Brennan 511 U.S. 825, 114 S. Ct. 1970 (1994), or if they place a prisoner in a situation of danger from others who are known to be aggressive and violent; Hearns v. Terhune, 413 F. 3d 1036, 1041 (9th Cir. 2005).

Courts have acknowledged in numerous cases that transgender prisoners are a particular risk for sexual assault, and prison officials may be held liable based on their knowledge of those risks; Farmer v. Brennan 511 U.S. at 848-49; Green v. Bowles, 361 F. 3d 290, 294 (6th Cir. 2004); Taylor v. Michigan Dept. of Corrections, 69 F. 3d 76, 84 (6th Cir. 1995); Butler v. Dowd, 979 F.2d 661-667 (8th Cir. 1992); Redman v. County of San Diego, 942 F.2d 1435, 1448 (9th Cir. 1991) (en banc); Vosburg v. Solem 845 F. 2d 763,766 (8th Cir. 1988).

Subsequently, the **Department of Justice** in its summary of the final Prison Rape Elimination Act (P. R. E. A) recognized "the particular vulnerabilities of inmates who are

4

Lesbian, **Gay, Bisexual, Transgender**, and Intersex or whose appearance or manner does not conform to traditional gender expectations" and included landmark protections against the types of assaults, harassment, and prolonged isolation that are commonly experienced by the LGBT individuals in custody. 77 F. R. 37105 (June 20, 2012).

Deliberate indifference may be shown by "a series of incidents closely related in time" or by "systematic deficiencies in staffing, facilities, or procedures..." Gilland v. Owens, 718 F. Supp. 665, 687 (W.D Tenn. 1989). (intentional and deliberate decisions and procedures that do not protect inmates' rights and do not protect their personal safety or "systematic deficiencies in facilities, procedures, or staffing" can constitute deliberate indifference). In the instant case, the Defendant stated: "there is no video footage… showing the alleged assailant entering B-2 Unit..." Exbt. #5, (#21 and #22), Exbt. #2 (#10). Yet the defendant admitted that **the "alleged" assailant was present** (out –of-bounds) **in Plaintiff's assigned housing unit** on May 19, 2016, during the time the "alleged" incident transpired. Exbt. #5, (#8). Subsequently, the defendant is without knowledge and information concerning how the "alleged" assailant gained access to B-2 Unit on May 19, 2016. Exbt. #1, (#3). Further, there is no video footage showing who and how many housing unit officers were on duty on the Plaintiff's housing unit on May 19, 2016. Exbt. #2, (#11). When combined, these for admissions made by the defendant indicates, clearly, that the defendant was in violation of the Prison Rape Elimination Act of 2003; 28 C.F.R., Part 115, § 115.13 (a), B.O.P. Program Statements # 1210.27 (7) (b) and #3420.11 (6), and 18 U.S.C. §4042.

By observation, there were always **at least two housing unit officers on duty, on every shift** (including the day shift hours) on B-2 unit at U. S. P. Tucson since after about

January 1, 2015. (Decl. of Gladney). However, during the time of the "alleged" incident, there was only one housing unit officer on duty on B-2 unit. Exht. #3, (#5). The failure to provide adequate supervision of inmates supports the finding of deliberate indifference in group risk cases. Krein v. Norris, 309 F. 3d 487, 489-91 (8th Cir. 2002); Lawrence v. Norris, 307 F. 3d 745, 747 (8th Cir. 2002); Marsh v. Butler County, Ala.,268 F. 3d 1014, 1029 (11th Cir. 2001) (en banc); Lopez v. LeMaster, 172 F. 3d 756,762 (10th Cir. 1991); Smith v. Arkansas Dept. of Corrections, 103 F. 3d 637, 645 (8th Cir. 1996); Alberti v. Klevenhagen, 790 F. 2d 1220, 1224 (5th Cir. 1986). **Understaffing could be a "defacto policy of inaction"** supporting liability. Winton v. Board of Commissioners of Tulsa County, Okla., 88 F. Supp. 2d 1247, 1268 (N. D. Okla. 2000). In the present case, the Plaintiff asserts that defendant failed to follow its' own staffing plan and failed to properly monitor the housing unit with video monitoring and direct staff supervision, causing Plaintiff's resulting injuries.

*Resulting Injuries*

The plaintiff has/is experiencing an array of symptoms directly caused by the sexual trauma she experienced. Her symptoms range from: Post-Traumatic Stress, Anxiety, Panic Attacks, Recurrent Nightmares, Night sweats, Rapid Heartbeats, Heart Palpitations, Shortness of Breath, Sleep Apnea, and Hypertension. Doc. #1, Exht. #8, and Decl. of Gladney. The Plaintiff has had multiple consultations with B.O.P. Psychology staff at U.S.P. Tuscan, F.T.C. Oklahoma, U.S.P. Beaumont, and U.S.P. Beaumont Coleman II complaining of symptoms directly related to the sexual assault at U.S.P. Tuscan. Exbt. #8 However, the B.O.P. services have been inadequate in fully alleviating the Plaintiff's symptoms. As recent as December 12, 2017, the Plaintiff

6

reported experiencing suicidal thoughts to staff.. Therefore, the Plaintiff intends to seek services for "Survivors of Sexual Abuse" from other non B.O.P. using her own financial resources . The Plaintiff has sought services from several free organizations, (in which they have replied with various pamphlets) yet they too have proven to be ineffective for the Plaintiff. (Decl. of Gladney). The Plaintiff will incur incidental expenses related to the necessary care and proper treatment for said injuries for an indefinite period of time in the future, in addition to the requested Monetary Damages for recurrent pain and suffering.

Consequently, the Plaintiff respectfully request this Court to hold a hearing to determine the amount of damages owed to the Plaintiff.

## *Conclusion*

For the foregoing reasons, the Court should grand Summary Judgment on liability to the Plaintiff on his negligence and deliberate indifference claim.

Respectfully Submitted,

March 20th, 2019

EDWARD J. GLADNEY  # 80179-279
USP Coleman II
P.O . Box 1034
Coleman, FL  33521
(352) 689-7000

7

## Certificate of Service

I hereby certify that a copy of the foregoing document was mailed this March 21st, 2019 (month, day, year) to:

Name: AUSA M. A. Ambri

Address: 405 W. Congress St #4800, Tucson, AZ 85701

Attorney for Defendant(s)

_Edward J. Flahney_ (Signature)