SH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward J. Gladney,<br>　　　　　Plaintiff,<br>v.<br>JT Shartle, et al.,<br>　　　　　Defendants. | No.  CV 17-00427-TUC-DCB<br><br>**AMENDED[1] ORDER** |

　　　　Plaintiff Edward J. Gladney, who is currently confined in United States Penitentiary (USP)-Coleman in Coleman, Florida, brought this civil rights action pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346 and 2671-2680. (Doc. 10.) Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 76) and Defendant's Motion to Dismiss/Motion for Summary Judgment (Doc. 109). The Motions are fully briefed and ripe for ruling. (Docs. 114, 115, 122, 126.)[2]

**I.　　Background**

　　　　In her Second Amended Complaint, Plaintiff sues the United States of America and raises one claim for relief. (Doc. 10 at 3.) Plaintiff alleges that on May 19, 2016, while she was housed in the USP-Tucson in Tucson, Arizona, she was sexually assaulted by prisoner ▇▇▇▇▇ between 9:01 a.m. and 10:05 a.m. (*Id.*) Plaintiff claims Defendant

---

[1] Amended *nunc pro tunc* solely for the purpose of disclosure.

[2] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 108.)

negligently "failed to provide adequate officer monitoring of an out-of-bounds inmate and failed to adequately staff [the] housing unit with at least two officers as required." (*Id.*) Plaintiff seeks monetary damages. On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an FTCA claim and directed Defendant to answer. (Doc. 12.)

Defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(1) on the grounds that Plaintiff's claim is barred by the FTCA's discretionary function exception and that Plaintiff failed to exhaust her administrative remedies "on any and all claims beyond the alleged claim of failure to monitor by the officer on duty in Plaintiff's housing unit." (Doc. 109 at 1.) In the alternative, Defendant moves for summary judgment on the merits of Plaintiff's claim. (*Id.*) Plaintiff also moves for summary judgment. (Doc. 76.)

## II.     Relevant Facts

### A.     Sexual Assault

On May 19, 2016, Plaintiff was housed in the USP-Tucson B-2 Housing Unit. (*Id.* ¶ 1.) Prisoner ▇▇▇▇▇▇ was housed in the D-1 Housing Unit. (*Id.* ¶ 2.) USP-Tucson is a designated Sex Offender Management Program (SOMP) facility, with the goals of assessment, treatment, and management of convicted sex offenders. (Doc. 90 (Pl.'s Supp. Statement of Facts) ¶ 36; Doc. 90-1 at 1–2 (Pl.'s Ex. 10); Doc. 102 (Def.'s Statement of Facts) ¶ 15.) SOMP facilities generally "maintain a significant proportion of sexual offenders in the population." (Doc. 90-1 at 6 (Pl.'s Ex. 11).)

Plaintiff identifies herself as "transgender/feminine." (Doc. 77 (Pl.'s Statement of Facts) ¶ 18.)[3] She asserts that she has "been outwardly homosexual since the year 2001, and [has] been outwardly transgender since July of 2013." (Doc. 80 (Pl.'s Decl. ¶ 46).) Plaintiff states that she has "had feminine mannerisms since grade school" and the staff at USP-Tucson often addressed him as "M[a']am and Ms." (*Id.* ¶ 47.)

---

[3] Plaintiff also presents evidence regarding a different prisoner who engaged in non-consensual sexual contacts with Plaintiff, but these events took place in May and June 2017, and are not relevant to her claim before the Court; therefore, this evidence will be disregarded. (*See* Doc. 117; Doc. 120-1 at 50–56 (Pl.'s Exs. 22–25).)

1  On May 19, 2019, between the hours of 9:01 a.m. and 10:05 a.m., Housing Unit
2 Officer (HUO) B. Westling was the only HUO on duty in the B-2 Housing Unit. (Doc. 77
3 ¶ 3.) Plaintiff alleges that at some point on May 19, 2016, ▮ entered the B-2 Unit and
4 sexually assaulted her between the hours of 9:01 a.m. and 10:05 a.m. (Doc. 10 at 3; Doc.
5 80 (Pl.'s Decl.) ¶ 13.) Plaintiff states that ▮ asked for help cleaning his shoes. (*Id.* ¶
6 17.) Plaintiff entered cell #107, and cleaned ▮'s shoes. (*Id.* ¶¶ 19–22.) When
7 Plaintiff attempted to leave the cell, ▮ placed a "make-shift knife" to Plaintiff's back,
8 pulled Plaintiff's pants and underwear down, and inserted his finger into Plaintiff's anus
9 while masturbating. (*Id.* ¶¶ 24–30.) Afterwards, ▮ put the knife away and threatened
10 Plaintiff not to tell anyone, and Plaintiff pulled up her shorts and underwear and exited the
11 cell. (*Id.* ¶¶ 31–32.)

12  On May 20, 2016, Plaintiff "reported the incident by sliding a note under the
13 Counselor's door[.]" (Doc. 80 ¶ 35.) In an Inmate Request to Staff dated May 19, 2016,
14 Plaintiff stated:

> [▮] has been coming in this unit on a regular basis
> harassing me which was a reason I moved to B-1 a few months
> back. Today, he came in the unit between 9:00 a.m.-9:15 a.m.,
> and left at the 10 a.m. recall (10:15 a.m.). When he came into
> the unit, he went in cell #107 and called me in a few minutes
> later. He asked me to perform oral sex. I refused. At this point
> he became very hostile and threatened me. He then forced my
> shorts down and began masturbating to the point of ejaculation.
> Please keep him away from me. I am in fear of my life with
> him on this yard.

(Doc. 102-4 (Def.'s Ex. 3, Attach. A).)

 Plaintiff was subsequently called into the Lieutenant's office where she described
the sexual assault "in great detail" to Lieutenants R. Reed and J. Van Devender and a prison
psychologist. (*Id.* ¶¶ 36–37.) Plaintiff was given "a medical evaluation and psychological
services," and an investigation was initiated. (Doc. 102 ¶ 5.) At some point after Plaintiff

1  reported the incident, ▮ was placed in the Special Housing Unit (SHU) pending
2  investigation. (Doc. 77 ¶ 4.)[4]
3       On May 23, 2016, Plaintiff and ▮ were interviewed separately. (Doc. 110 at 6
4  (Def.'s Ex. 2, Attach. A).) ▮ admitted to being in an unauthorized location ("out of
5  bounds"), but he denied sexually assaulting Plaintiff. (*Id.*) Interviews were also conducted
6  with other prisoners; no one witnessed the reported incident. (*Id.* at 7.) Plaintiff reported
7  that ▮ had been harassing her for approximately six months, but this was the first time
8  she had reported ▮'s sexual harassment to USP-Tucson staff. (*Id.* at 8.) According
9  to the investigation notes, medical evaluation notes, and psychology services notes,
10 Plaintiff reported that ▮ pulled her pants down and began to masturbate and that there
11 was no physical contact or penetration during the incident. (Doc. 110 at 6, 8, 12.)
12      The USP-Tucson staff reviewed video of the B-2 Unit, but there was no footage
13 showing what happened inside cell #107. (Doc. 102 ¶ 10.) There is no video footage
14 showing ▮ entering the B-2 Unit the day of the assault. (Doc. 77 ¶ 10.)
15      The investigation resulted in a determination that the incident was unsubstantiated.
16 (Doc. 102 ¶ 11.) ▮ was disciplined for being out of bounds, and he was transferred
17 out of USP-Tucson shortly after Plaintiff reported the sexual assault. (*Id.* ¶¶ 12–13; Doc.
18 77 ¶ 9.)

### B. Administrative Claim

Plaintiff completed an administrative tort claim ("Form 95") on September 15, 2016; it was received by the Bureau of Prisons (BOP) on October 24, 2016. (Doc. 102-4 at 7 (Def.'s Ex. 3, Attach. B).) In the claim, Plaintiff alleged that:

> On May 19, 2016, between the hours of 9:01 a.m. and 10:05 a.m., [▮], who was assigned to be housed on D-1 unit (south side) ventured "out of bounds" to my assigned unit B-2 (north side) and sexually harassed and assaulted me. The officer posted in my unit (B-2), Correctional Officer B.

---

[4] The SHU is a housing unit where prisoners are securely separated from the general prisoner population to ensure the safety, security, and orderly operation of the prison. (Doc. 77 ¶¶ 6–7.)

- 4 -

> Westling, willfully or otherwise negligently failed to monitor inmates who did not belong in the unit (B-2).

(*Id.*)

Plaintiff's claim was investigated, and in a response dated March 10, 2017, Plaintiff was informed that the "[i]nvestigation fail[ed] to disclose any evidence of negligence or other conduct for which the United States is liable. You have failed to establish that you sustained a loss or personal injury as a result of staff negligence in this matter. Accordingly, your claim is denied." (*Id.* at 9 (Def.'s Ex. 3, Attach. C).) Plaintiff was also informed that she had six months from the date the response was mailed to bring a lawsuit. (*Id.*)

### C. Relevant Policies

#### 1. USP-Tucson Housing Unit Staffing

"Staffing at Bureau of Prisons facilities is based on the security level of the institution, the unique mission and layout of the institution, and the Bureau of Prisons['] allocation of financial and human resources across the 122 prisons it operates." (Doc. 102 ¶ 30.) Between 2013 and 2016, the BOP staffing allocation for HUOs at high security facilities, such as USP-Tucson, provided for one officer on each unit during each of the three shifts: morning (12:00 a.m. to 8:00 a.m.), day (8:00 a.m. to 4:00 p.m.), and evening (4:00 p.m. to 8:00 a.m.) (*Id.* ¶ 31.) The staffing allocation also allowed for a second HUO to be scheduled in each unit during the evening shift and on weekends. (*Id.*; Doc. 110 at 23.)

In 2006, the BOP sought a budget increase "to provide for a second correctional officer in each unit, on each shift, at High-Security institutions, like USP Tucson." (*Id.* ¶ 32.) Once Congress approved the budget increase, the BOP updated its staffing guidelines to provide for two HUOs on each shift at all high-security facilities. (*Id.*; Doc. 110 at 21, 23, 27.) The Master Agreement between the BOP and the Council of Prison Locals requires that "quarterly rosters must be posted prior to the upcoming quarter, so [that] bargaining unit staff can bid for assignments and shifts and submit requests for

- 5 -

leave." (Doc. 102 ¶ 33.) In compliance with the Master Agreement, "the additional post created by the updated staffing guidelines had to be added to the roster and posted for the bargaining unit staff bidding process." (*Id.*) As such, the updated staffing guidelines did not go into effect at USP-Tucson until the second quarter change on June 15, 2016. (*Id.*)

### 2. BOP Program Statements (PS)

According to PS 5500.14,[5] BOP facilities conduct five "official counts" every 24 hours. (*Id.* ¶ 36.) At USP-Tucson, official counts took place at around 12:01 a.m., 3:00 a.m., 5:00 a.m., 10: a.m., 4:00 p.m., and 10:00 p.m. (*Id.*) During official counts, all prisoners are locked in their cells while two staff members check each cell to make sure that the assigned prisoners are present and alive by "positively observing human flesh" when counting each prisoner. (*Id.*; PS 5500.14 § 300(4).)

Under PS 5500.14, "census checks" are conducted to identify prisoners in unauthorized and unassigned areas. (Doc. 102 ¶ 37.) A census check is not an official count or a total head count and must be conducted during each work period, morning and evening. (*Id.*; PS 5500.14 § 304.) "Institutions will set guidelines and procedures for conducting the census check in an Institutional Supplement." (PS 5500.14 § 304(1).) At the relevant time, USP-Tucson morning census checks occurred after the 7:50 a.m. work call and before the 9:00 a.m. open move. (Doc. 102 ¶ 37.) On the morning of May 19, 2016, the census check took place at 8:40 a.m. and showed no unauthorized prisoners present and no prisoners absent without leave. (*Id.*)

With the exception of the official counts and census checks, PS 5500.14 does not contain any further parameters for scheduling or conducting monitoring in BOP housing units.

---

[5] Complex Captain Darrin McWhorter asserts that a copy of PS 5500.14 was included as Attachment J to his declaration, but the exhibit is not included in the Court's records. (*See* Doc. 102-3 at 9 (McWhorter Decl. ¶ 35).) However, a copy of PS 5500.14 is available to the public at https://www.bop.gov/policy/progstat/5500_014.pdf. A court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006).

PS 3420.11(6) states that BOP "[e]mployees are required to remain fully alert and attentive during duty hours."[6] Additionally, PS 1210.24(7) provides that "[b]reach of security or safety . . . resulting in escape or serious injury" constitutes a Classification 2 case of employee misconduct, and "[r]efusal to follow instructions or procedures . . . [and] failure to properly supervise or control persons in custody" constitutes a Classification 3 case of employee misconduct.[7]

### 3. Federal Statutes and Regulations

Pursuant to 18 U.S.C. § 4042(a)(2), the BOP is generally required to "provide suitable quarters and provide for the safekeeping, care, and subsistence" of prisoners in its custody. However, the statute does not contain any specifications for how BOP is to satisfy this duty. *See* 18 U.S.C. § 4042(a)(2).

Additionally, under the Prison Rape Elimination Act (PREA) National Standards, an "agency shall ensure that each facility it operates shall develop, document, and make its best efforts to comply on a regular basis with a staffing plan that provides for adequate levels of staffing, and, where applicable, video monitoring, to protect inmates against sexual abuse." 28 C.F.R. § 115.13. Further, "[i]n calculating adequate staffing levels and determining the need for video monitoring," correctional facilities must consider:

> (1) Generally accepted detention and correctional practices;
>
> (2) Any judicial findings of inadequacy;
>
> (3) Any findings of inadequacy from Federal investigative agencies;
>
> (4) Any findings of inadequacy from internal or external oversight bodies;
>
> (5) All components of the facility's physical plant (including "blind-spots" or areas where staff or inmates may be isolated);

---

[6] A copy of PS 3420.11 is available to the public at https://www.bop.gov/policy/progstat/3420_011.pdf.

[7] A copy of PS 1210.24 is available to the public at https://www.bop.gov/policy/progstat/1210_024.pdf.

- 7 -

   (6) The composition of the inmate population;

   (7) The number and placement of supervisory staff;

   (8) Institution programs occurring on a particular shift;

   (9) Any applicable State or local laws, regulations, or standards;

   (10) The prevalence of substantiated and unsubstantiated incidents of sexual abuse; and

   (11) Any other relevant factors.

(*Id.*)

### III. Subjection Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Under Federal Rule of Civil Procedure 12(b)(1), a defendant may seek dismissal of an action for lack of subject matter jurisdiction. A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can be either a facial or factual attack. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Dismissal is appropriate if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984–985 (9th Cir. 2008). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039. When addressing a factual attack on jurisdiction, a court may review evidence beyond the complaint. *Id.* The plaintiff has the burden of proving that the court has subject matter jurisdiction. *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

. . .

. . .

- 8 -

**A.  Exhaustion**

A plaintiff may not bring an FTCA claim until the plaintiff has exhausted all administrative remedies. *McNeil v. United States*, 508 U.S. 106, 113 (1993). Courts strictly construe this requirement because "[s]overeign immunity is an important limitation on the subject matter jurisdiction of federal courts. The United States, as sovereign, can only be sued to the extent it has waived its sovereign immunity." *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250–1251 (9th Cir.2006). "[Courts] have repeatedly held that the exhaustion requirement [of the FTCA] is jurisdictional in nature and must be interpreted strictly . . . . Any such waiver must be strictly construed in favor of the United States." *Id.* As such, § 2675(a) of the FTCA provides that:

> An action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).

Here, Defendant argues that "Plaintiff has failed to exhaust her administrative remedies with respect [to] any and all claims other than a failure to monitor by the officer on duty[.]" (Doc. 109 at 11.) The only allegations Plaintiff brought in her Second Amended Complaint are that Defendant (1) "failed to provide adequate officer monitoring of an out-of-bounds inmate" and (2) "failed to adequately staff [the] housing unit with at least two officers as required." (Doc. 10 at 3.) It is undisputed that in her September 15, 2016 administrative tort claim, Plaintiff only complained that she was sexually assaulted as result of the on-duty officer failing to monitor the prisoners in the B-2 Unit. (Doc. 102-4 at 7 (Def.'s Ex. 3, Attach. B).) Plaintiff did not mention inadequate staffing in her administrative tort claim. (*See id.*) Plaintiff's administrative tort claim was denied on March 10, 2017. (*Id.* at 9 (Def.'s Ex. 3, Attach. C).) There is no evidence that Plaintiff filed any other administrative tort claims regarding the May 19, 2016 sexual assault or inadequate staffing or that she exhausted any other claims. On these facts, the Court finds that the only claim Plaintiff exhausted is her claim that she was sexually assaulted due to

Defendant's failure to provide adequate monitoring of her housing unit. All other claims will be dismissed for failure to exhaust.

### B. FTCA/Discretionary Function Exception

#### 1. Legal Standard

"The FTCA provides a limited waiver of the sovereign immunity of the United States for torts committed by federal employees acting within the scope of their employment." *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000) (citing *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995)). Under the FTCA, the United States may be held civilly liable for the torts of its employees "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. To state a claim under the FTCA, a plaintiff "must show the government's actions, if committed by a private party, would constitute a tort" under state law. *Love v. United States*, 60 F.3d 642, 644 (9th Cir. 1995); 28 U.S.C. § 1346(b) (a plaintiff must allege that the United States "would be liable to the claimant" as "a private person" "in accordance with the law of the place where the act or omission occurred"). In other words, a plaintiff must allege a state law tort claim. *F.D.I.C. v. Meyer*, 510 U.S. 471, 445, 477–78 (1994). Certain state law claims, however, are excluded from the FTCA—for example, libel, slander, misrepresentation, false arrest, and malicious prosecution. *See* 28 U.S.C. § 2680(h).

Also, the FTCA does not apply to claims involving "an act or omission of an employee of the Government . . . [that is] based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Thus, the FTCA may not apply to acts that "involv[e] an element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *Green v. United States,* 630 F.3d 1245, 1249 (9th Cir. 2010) (if the discretionary function exception applies, sovereign immunity is reinstated).

The government bears the burden of showing that the discretionary function exception applies. *Bear Medicine v. U.S. ex rel. Sec'y of the Dep't of the Interior*, 241 F.3d

1208, 1213 (9th Cir. 2001). To make that showing, the government must prove that each of the allegedly wrongful acts, by each allegedly negligent actor, is covered by the discretionary function exception. *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002) ("when determining whether the discretionary function exception is applicable, '[t]he proper question to ask is not whether the Government as a whole had discretion at any point, but whether its allegedly negligent agents did in each instance'") (quoting *In re Glacier Bay*, 71 F.3d 1447, 1451 (9th Cir. 1995)).

For the discretionary function exception to apply, the challenged action must satisfy a two-part test. *Valdez*, 56 F.3d at 1179. First, the court must determine "whether a federal statute, regulation, or policy mandated a specific course of action, or whether the government actor retained an element of judgment or choice with respect to carrying out the challenged action." *Green*, 630 F.3d at 1250. If so, the court proceeds to determine whether that judgment was based on considerations of public policy. *Id.* (internal citations and quotations omitted). If both prongs are satisfied, then the challenged action "is immune from suit—and federal courts lack subject matter jurisdiction—even if the court thinks the government abused its discretion or made the wrong choice." *Id.*

**2.  Discussion**

Plaintiff's claim against Defendant is grounded on the inadequate monitoring of her housing unit on the day she was sexually assaulted. Defendant argues that this claim is barred by the discretionary function exception to the FTCA. (Doc. 109 at 12.)

As mentioned previously, federal law imposes a duty on the BOP to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2). However, courts have held that although § 4042 imposes a general duty to house and care for prisoners, it does not mandate a specific manner in which to carry out that duty. *See Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir.1998); *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997). Likewise, the PREA National Standards provide a list of several factors for prison officials to consider when adequately staffing BOP

facilities and for determining the need for video monitoring, thus giving officials broad discretion when making such decisions. 28 C.F.R. § 115.13. And, BOP PS 5500.14 mandates that official counts and census checks take place at certain times, but outside of those times, the protocols for monitoring housing units are left to the discretion of the facility. Plaintiff points to PS 3420.11 and 1210.24 to argue that monitoring of her housing unit did not involve an element of judgment or choice. (Doc. 122 at 11.) But those Program Statements do not provide any specific parameters or protocols for monitoring housing units. Thus, Defendant has satisfied the first prong of the discretionary function analysis, and Plaintiff has failed to present evidence to create a question of fact that the monitoring of her housing unit did not involve a discretionary governmental function. Further, "[w]hen a statute, regulation or agency guideline allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Weissich v. United States,* 4 F.3d 810, 814 (9th Cir.1993) (citing *Gaubert*, 499 U.S. at 324). Plaintiff has not overcome this presumption, thus the second prong of the analysis has been satisfied as well.

Although Plaintiff's allegations of sexual assault are troubling, decisions by governmental officials as to the day-to-day security needs of a prison, including the number of officers to employ to supervise a given area, where to place video cameras if they are to be used at all, and tactical choices made surrounding the movement of prisoners within an institution are judgment calls and choices based on policy determinations that seek to accommodate safety and security goals in addition to finite agency resources.[8] Thus, such decisions fall within the realm of discretionary governmental decisions that Congress intended to protect from exposure to suit by private individuals. *See Cohen*, 151 F.3d at 1345 (discretionary function exception precludes suit based on allegedly improper decisions in classifying prisoners and placing them in institutions, even if result is one prisoner attacking another prisoner); *Calderon*, 123 F.3d at 951 (discretionary function

---

[8] Thus, even if Plaintiff had exhausted the portion of her FTCA claim regarding inadequate staffing, it would be barred by the discretionary function exception for the same reasons.

exception precludes FTCA claim by federal prisoner injured in assault by another prisoner). "Balancing the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison involves considerations based upon public policy." *Calderon,* 123 F.3d at 951 (citing *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979) (holding that prison administrators should be afforded wide-ranging deference in implementing and executing policies because discretion is needed to preserve internal discipline and maintain institutional security)).

Plaintiff argues that she was sexually assaulted by a prisoner who was "out of bounds" and that the on-duty officer should not have allowed the other prisoner to enter Plaintiff's housing unit. But as the Court discussed above, day-to-day security considerations, including monitoring the housing unit for out of bounds inmates, are precisely the type of policy decisions that are within the discretion of Defendant. Because the Court finds that the decisions involved here were discretionary and that the discretion was grounded in public policy considerations, the discretionary function exception to the FTCA protects Defendant from suit, even if Defendant abused its discretion or was negligent in the performance of its discretionary function. *See Calderon,* 123 F.3d at 951. Accordingly, because the Court is without subject matter jurisdiction in this case, the Court will dismiss Plaintiff's claim.[9]

**Accordingly,**

**IT IS ORDERED:**

(1) Plaintiff's Motion for Summary Judgment (Doc. 76) is **denied**.

/////

/////

/////

/////

/////

---

[9] Because the Court lacks subject matter jurisdiction over Plaintiff's claim, it will not address the remainder of Defendant's arguments presented in its Motion for Summary Judgment.

      (2)    Defendant's Motion to Dismiss/Motion for Summary Judgment (Doc. 109) is **granted** as discussed herein, and the Clerk of Court must terminate the action and enter judgment accordingly.

      Dated this 18th day of October, 2019.

_____
Honorable David C. Bury
United States District Judge